WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Freddie Lee Ford, Jr., | CIV 13-2474-PHX-DGC (MHB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT COURT:

Petitioner Freddie Lee Ford, Jr., who is confined in the Arizona State Prison Complex, filed a *pro se* Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 6). Respondents filed an Answer (Doc. 13), and Petitioner filed a Reply (Doc. 13).

### BACKGROUND[1]

The instant habeas petition involves Petitioner's plea agreements in two cause numbers: CR 2010-106247 and CR 2010-117471.

<u>CR 2010-106247</u>

On February 10, 2010, the Maricopa Grand Jury indicted Petitioner on Counts 1, 2, and 8, aggravated assault, class 2 dangerous felonies; Counts 3, 4, and 5, aggravated assault, class 3 dangerous felonies; Count 6, resisting arrest, a class 6 felony; and Count 7, assault,

---

[1] Unless otherwise noted, the following facts are derived from the exhibits submitted with Doc. 13 – Respondents' Answer.

a class 3 misdemeanor. (Exh. A.) On August 20, 2010, Petitioner entered a plea agreement in which he pled guilty to amended Counts 1 and 2, aggravated assault, both class 2 felonies with one prior conviction; and amended Count 4, aggravated assault, a class 3 felony. (Exhs. B and D.) The terms of the plea included that Petitioner would be sentenced to prison for Counts 1 and 2, with no agreement regarding whether those sentences would be served consecutively or concurrently. (Id. at 2.) Additionally, Petitioner agreed that he would be placed on supervised probation for Count 4 upon physical release from prison on Counts 1 and 2. (Id.) The plea was contingent on Petitioner's entry into, and the trial court's acceptance of, a plea agreement in cause number, CR 2010-117471. (Id. at 3.) In exchange, the State agreed to dismiss the remaining counts, as well as the remaining prior felony convictions and other sentence-aggravating allegations. (Id.)

As described by the Arizona Court of Appeals, the Petitioner's convictions stemmed from his "threatening two police officers and a third person with a pellet gun." (Exh. T at 2.) At the plea proceeding, Petitioner's counsel described the factual basis as follows:

> . . . Mr. Ford intentionally placed – it's Officer Patrick Sullivan, who was at the time a police officer acting in his official duties as such, in reasonable apprehension of imminent physical injury, at which time Mr. Ford had displayed – it turned out to be a pellet gun, but it would certainly classify as a deadly weapon or simulated deadly weapon, but at any rate placed that officer in reasonable apprehension of imminent physical injury.
>
> As to Count 2, Your Honor, the same facts. It was another officer that responded to the scene, at which time Mr. Ford also placed that officer, who was David Dehority, again a police officer acting in his official duties as such, in reasonable apprehension of imminent physical injury, again with the pellet gun.
>
> In both Counts 1 and 2, at that time Mr. Ford had previously been convicted from an offense dated September 30th, 1995. It was an armed robbery conviction, a class 2 felony. That was a conviction that was entered in the Maricopa County Superior Court CR1995-09859. Conviction was entered on June 18th, 1996, at which time Mr. Ford was represented by an attorney.
>
> As to Count 4, again on February 2nd of 2010, within Maricopa County in the jurisdiction of this court, Mr. Ford intentionally placed – it would be Nancy Spencer in reasonable apprehension of imminent physical danger, again with the same pellet gun, Your Honor.

(Exh. E at 22-23.) Petitioner confirmed his attorney's recitation of the facts. (Id. at 23-24.) The presentence report also described in detail the events leading to the charges in CR 2010-106247:

> On February 2, 2010, police responded to a call of a subject with a gun who was pointing it at passersby in the area. Police officers Dehority and Sullivan arrived and observed the defendant standing in a left hand turn lane on Southern Avenue, holding a gun in his right hand and a beer in his left hand. The defendant refused commands from police to drop the gun. The defendant aimed the gun at a dog behind a nearby fence then pointed the gun at Officer Sullivan. Police fired one shot at the defendant, causing him to fall to the ground; however, the bullet did not strike him. The defendant stood up and refused commands to get on the ground. The defendant aggressively resisted arrest and it took five officers to take him into custody. Subsequent investigation of the defendant's actions revealed the defendant pointed his gun at several people on the roadway. Victim Timothy Olsen confirmed the defendant pointed a gun at him while Mr. Olsen was leaving a local merchant. Victims Nancy Spencer and Ed Metzner, riding together as Animal Control Officers, also confirmed the defendant pointed a gun at them as well as the dog. Police determined the gun involved was an air gun. While the defendant was being treated at Maricopa County Medical Center, he spat on a security guard.

(Exh. I at 2.)

On January 7, 2011, after considering aggravating and mitigating factors, the trial court sentenced Petitioner to an aggravated term of 18.5 years of imprisonment for Count 1; to another aggravated term of 18.5 years of imprisonment for Count 2, to be served consecutively to the sentence imposed in Count 1; and to the probatiory period for Count 4 per the plea agreement. (Exh. F at 27-30; G.) Petitioner was advised orally, and additionally signed a written notice, of his post-conviction rights of review. (Exhs. F at 31; G; H.)

On February 2, 2011, Petitioner filed a timely notice of post-conviction relief (PCR), and on February 7, 2011, the trial court appointed PCR counsel. (Exhs. J and K.) On July 20, 2011, Petitioner's PCR counsel filed a notice of completion of review, indicating that, after reviewing the record, counsel found no "claims for relief to raise in post-conviction proceedings." (Exh. L at 1.) On July 27, 2011, the trial court entered an order permitting Petitioner to file a pro per PCR petition. (Exh. M.) On September 14, 2011, Petitioner filed a timely pro per PCR petition, raising the following issues: 1) ineffective assistance of

- 3 -

counsel (IAC) for failure to "explain contents of plea agreements to defendant;" and 2) the trial court improperly aggravated his sentences and also improperly ordered them to be served consecutively. (Exh. N at 6-8.) Treating the PCR as timely filed, on September 26, 2011, the trial court ordered the State to respond, and the State did on October 31, 2011. (Exhs. O and P.) On November 7, 2011, the trial court ordered that Petitioner be permitted to reply within 15 days, and Petitioner filed a reply on November 23, 2011. (Exhs. Q and R.) On January 11, 2012, the trial court denied Petitioner's PCR petition because it was "without any merit." (Exh. S.)

On January 19, 2012, Petitioner filed a petition for review of the trial court's denial of his PCR in the Arizona Court of Appeals, raising four issues for review: 1) whether his plea was legal because he was on "psychotropic narcotic drugs while pleading guilty before the judge;" 2) whether his sentence was properly aggravated with a prior conviction; 3) whether the imposition of consecutive sentences was proper; and 4) IAC (generally and relating to acceptance of his plea). (Doc. 6 at 31-46.) On May 30, 2013, the court of appeals denied the petition for review, concluding:

> On review, Ford essentially repeats his arguments below, expanding on some them. He maintains the trial court abused its discretion in accepting his guilty plea while he was on psychotropic medication and trial counsel was ineffective because he allowed Ford to plead guilty while on that medication.[FN] He further contends the court erred in imposing enhanced sentences because the conviction upon which the enhanced sentence was based was "not committed within the four to ten year[s] immediately proceeding [sic] the date of the new offenses." He again asserts that the court could not impose consecutive sentences because the convictions arose from "one single act."
>
> [FN] Ford also alleges on review that counsel "guaranteed" him "that he would only receive 10.5 years to sign the plea agreement and plea[d] guilty." Below he merely asserted, as part of his ineffective assistance of counsel claim, that counsel had "le[]d" him "to understand that there would be just one combined plea agreement with the consequences ranging from 9 years to the aggravating max of 18.5." This court will not consider for the first time on review issues that have neither been presented to, nor ruled on by, the trial court. *State v. Ramirez*, 616 P.2d 924, 928 (Ariz. App. 1980); *see also* Ariz. R. Crim. P. 32.9(c)(1)(ii) (petition for review shall contain "[t]he issues which were decided by the trial court and which the defendant wishes to present" for review).

- 4 -

To present a colorable claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient under prevailing professional norms and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Ysea*, 956 P.2d 499, 504, ¶ 15 (1998). "A colorable claim of post-conviction relief is 'one that, if the allegations are true, might have changed the outcome.'" *State v. Jackson*, 97 P.3d 113, 114, ¶2 (Ariz. App. 2004), *quoting State v. Runningeagle*, 859 P.2d 169, 173 (Ariz. 1993). And "a defendant may seek relief from a conviction on the basis that counsel's ineffective assistance induced a guilty plea." *State v. Donald*, 10 P.3d 1193, 1198, ¶ 10 (Ariz. App. 2000).

Ford makes several allegations of ineffective assistance of trial counsel, most of them sufficiently vague or unsupported that we cannot meaningfully address them. He does assert, however, that counsel was ineffective in relation to his acceptance of the plea agreement. But, despite his claims that he was unable to understand the plea agreement or what was happening as his change-of-plea hearing, the record below shows that the trial court asked Ford about what medications he was taking and if they affected his ability to "think clearly." Ford clearly and unambiguously state "No." And the remainder of the transcript shows Ford responding appropriately to questions directed to him. To state a colorable claim, Ford must do more than simply contradict what the record plainly shows. *See State v. Jenkins*, 970 P.2 947, 952, ¶ 15 (Ariz. App. 1998) (defendant's claim he was unaware sentence "must be served without possibility of early release" not colorable when "directly contradicted by the record"). Because he merely contradicts the record, Ford has not established prejudice arising from counsel's actions in relation to Ford's use of medication. Therefore, the trial court did not abuse its discretion in finding this claim without merit. *See State v. Salazar*, 707 P.2d 944, 955 (Ariz. 1985) (if defendant fails to make sufficient showing on either element of *Strickland* test, court need not determine if other element established).

For the same reason, we reject Ford's claim that his due process rights were violated by the court's failure "to make [an] on-record determination of voluntarines[s] given [Ford's] admitted use of medication at the county jail by doctors." In support of this argument Ford relies on *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997), in which the Ninth Circuit determined that "[d]ue process requires a trial court to hold a competency hearing sua sponte whenever the evidence before it raises a reasonable doubt whether a defendant is mentally competent." But in this case, a competency evaluation pursuant to Rule 11, Ariz. R. Crim. P., already had taken place. And, nothing in the transcript of the change-of-plea hearing supports a conclusion that the court had before it evidence to raise a doubt about Ford's competence.

\\\

\\\

\\\

\\\

\\\

- 5 -

> The trial court also correctly denied relief on Ford's sentencing claims. A defendant is properly sentenced as a "category two repetitive offender" if he or she "stands convicted of a felony and has one historical prior felony conviction." A.R.S. § 13-105(22)(b). In calculating the ten-year period, "[a]ny time spent . . . incarcerated is excluded." *Id.* According to his own sentencing memorandum, Ford was incarcerated for five years after his conviction in 1996 for crimes committed in September 1995 and subsequently was imprisoned after being convicted of felonies in 2001 and 2007. The events giving rise to the charges at issue here occurred in February 2010. Thus, on the record before us, the prior conviction used to enhance Ford's sentence was committed within ten years of the current offenses when calculated according to § 13-105(22)(b). The trial court did not, therefore, abuse its discretion in denying relief on the claim.
>
> Ford's claim that consecutive sentences were barred because they arose from the same actions is likewise without merit. Section 13-116, A.R.S., provides that an act may be punished under "different sections of the laws," but that "in no event may sentences be other than concurrent." But "§ 13-116 does not apply to sentences imposed for a single act that harms multiple victims." *State v. Riley*, 992 P.2d 1135, 1142, § 21 (Ariz. App. 1999), *citing State v. Gordon*, 778 P.2d 1204 (Ariz. 1989). All three assaults here were committed against different victims. Thus consecutive sentences were not unlawful, and the trial court did not abuse its discretion in rejecting the claim.
>
> For all these reasons, although we grant the petition for review, we deny relief.

(Exh. T at 3-6.) On June 10, 2013, Petitioner filed a petition for review in the Arizona Supreme Court, and on September 16, 2013, that court denied review. (Exhs. U and V.) On October 30, 2013, the court of appeals issued its mandate. (Exh. W.)

CR 2010-117471

On April 16, 2010, the Maricopa County Grand Jury indicted Petitioner with one count of aggravated assault, a class 5 felony. (Exh. X.) As described in the presentence report, the facts underlying this charge are as follows:

> On November 4, 2009, while an inmate in the Maricopa County Jail Central Intake, the defendant exhibited strange behavior while in a holding cell. Detention officers contacted the defendant and instructed him to exit the cell. The defendant refused to comply, moved to the south side of the cell, lay on the ground and grabbed another inmate's leg; the defendant grabbed the door, reached up and grabbed Sergeant Scheffner by the neck. The defendant refused numerous verbal commands to stop. Officers deployed a taser gun at the defendant on two occasions to subdue him. Sergeant Scheffner suffered scratches on his neck and was taken for medical evaluation.

\\\

\\\

> A couple of months later, when the defendant was interviewed by jail investigators, the defendant stated he recalled the incident. When investigators asked the defendant to explain his erratic behavior at the time of the offense, the defendant reported he believed the officers wanted to put his head into a toilet. The defendant stated prior to his arrest and transport to the jail, he had been consuming alcohol all day and confirmed he was not on his psychiatric medication at the time of his arrest.

(Exh. I at 1.) The facts reiterated by defense counsel, and confirmed by Petitioner, at the plea proceeding. (Exh. E at 20-21.)

On August 20, 2010, Petitioner entered a plea agreement in which he agreed to plead guilty to an amended count of aggravated assault, a class 5 felony, and be placed on supervised probation upon physical release from serving the prison sentences imposed in cause number CR 2010-106247. (Exhs. Y and Z.) On January 1, 2011, pursuant to the plea agreement, the trial court placed Petitioner on probation, to be served concurrently with the probation imposed on Count 4 in CR 2010-106247. (Exh. AA.) Petitioner signed a notice of rights of review on January 1, 2011, alerting him to his post-conviction rights and deadlines. (Exh. BB.) Petitioner did not seek post-conviction review in this cause number.

In the instant habeas petition, Petitioner raises three grounds for relief: (1) Petitioner received ineffective assistance of counsel, in violation of the Fifth, Sixth, and Fourteenth Amendments, when counsel failed to "group plea's" and adequately investigate his mental history and alleged prior, (2) the trial court improperly aggravated his sentence and Petitioner's aggravated sentence violates his Fifth and Sixth Amendment rights, and (3) Petitioner's sentence was excessive, in violation of the Fifth Amendment.

\\\
\\\
\\\
\\\
\\\
\\\
\\\

- 7 -

**DISCUSSION**

In their Answer, Respondents contend that Grounds One and Three are procedurally defaulted, and Ground Two fails to state a basis for federal habeas relief. As such, Respondents request that the Court deny and dismiss Petitioner's habeas petition with prejudice.

**A.    Exhaustion and Procedural Default**

A state prisoner must exhaust his remedies in state court before petitioning for a writ of habeas corpus in federal court. See 28 U.S.C. § 2254(b)(1) and (c); Duncan v. Henry, 513 U.S. 364, 365-66 (1995); McQueary v. Blodgett, 924 F.2d 829, 833 (9th Cir. 1991). To properly exhaust state remedies, a petitioner must fairly present his claims to the state's highest court in a procedurally appropriate manner. See O'Sullivan v. Boerckel, 526 U.S. 838, 839-46 (1999). In Arizona, a petitioner must fairly present his claims to the Arizona Court of Appeals by properly pursuing them through the state's direct appeal process or through appropriate post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999); Roettgen v. Copeland, 33 F.3d 36, 38 (9th Cir. 1994).

Proper exhaustion requires a petitioner to have "fairly presented" to the state courts the exact federal claim he raises on habeas by describing the operative facts and federal legal theory upon which the claim is based. See, e.g., Picard v. Connor, 404 U.S. 270, 275-78 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). A claim is only "fairly presented" to the state courts when a petitioner has "alert[ed] the state courts to the fact that [he] was asserting a claim under the United States Constitution." Shumway v. Payne, 223 F.3d 982, 987 (9th Cir. 2000) (quotations omitted); see Johnson v. Zenon, 88 F.3d 828, 830 (9th Cir. 1996) ("If a petitioner fails to alert the state court to the fact that he is raising a federal constitutional claim, his federal claim is unexhausted regardless of its similarity to the issues raised in state court.").

A "general appeal to a constitutional guarantee," such as due process, is insufficient to achieve fair presentation. Shumway, 223 F.3d at 987 (quoting Gray v. Netherland, 518

U.S. 152, 163 (1996)); see Castillo v. McFadden, 399 F.3d 993, 1003 (9th Cir. 2005) ("Exhaustion demands more than drive-by citation, detached from any articulation of an underlying federal legal theory."). Similarly, a federal claim is not exhausted merely because its factual basis was presented to the state courts on state law grounds – a "mere similarity between a claim of state and federal error is insufficient to establish exhaustion." Shumway, 223 F.3d at 988 (quotations omitted); see Picard, 404 U.S. at 275-77.

Even when a claim's federal basis is "self-evident," or the claim would have been decided on the same considerations under state or federal law, a petitioner must still present the federal claim to the state courts explicitly, "either by citing federal law or the decisions of federal courts." Lyons v. Crawford, 232 F.3d 666, 668 (9th Cir. 2000) (quotations omitted), amended by 247 F.3d 904 (9th Cir. 2001); see Baldwin v. Reese, 541 U.S. 27, 32 (2004) (claim not fairly presented when state court "must read beyond a petition or a brief ... that does not alert it to the presence of a federal claim" to discover implicit federal claim).

Additionally, under the independent state grounds principle, a federal habeas court generally may not review a claim if the state court's denial of relief rests upon an independent and adequate state ground. See Coleman v. Thompson, 501 U.S. 722, 731-32 (1991). The United States Supreme Court has explained:

> In the habeas context, the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism. Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

Id. at 730-31. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. See id. at 731-32.

1  Claims may be procedurally barred from federal habeas review based upon a variety of factual circumstances. If a state court expressly applied a procedural bar when a petitioner attempted to raise the claim in state court, and that state procedural bar is both "independent"[2] and "adequate"[3] – review of the merits of the claim by a federal habeas court is barred. See Ylst v. Nunnemaker, 501 U.S. 797, 801 (1991) ("When a state-law default prevents the state court from reaching the merits of a federal claim, that claim can ordinarily not be reviewed in federal court.") (citing Wainwright v. Sykes, 433 U.S. 72, 87-88 (1977) and Murray v. Carrier, 477 U.S. 478, 485-492 (1986)).

Moreover, if a state court applies a procedural bar, but goes on to alternatively address the merits of the federal claim, the claim is still barred from federal review. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) ("[A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. ... In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.") (citations omitted); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003) ("A state court's application of a procedural rule is not undermined where, as here, the state court simultaneously rejects the merits of the claim.") (citing Harris, 489 U.S. at 264 n.10).

A procedural bar may also be applied to unexhausted claims where state procedural rules make a return to state court futile. See Coleman, 501 U.S. at 735 n.1 (claims are barred from habeas review when not first raised before state courts and those courts "would now

---

[2] A state procedural default rule is "independent" if it does not depend upon a federal constitutional ruling on the merits. See Stewart v. Smith, 536 U.S. 856, 860 (2002).

[3] A state procedural default rule is "adequate" if it is "strictly or regularly followed." Johnson v. Mississippi, 486 U.S. 578, 587 (1988) (quoting Hathorn v. Lovorn, 457 U.S. 255, 262-53 (1982)).

- 10 -

1  find the claims procedurally barred"); Franklin v. Johnson, 290 F.3d 1223, 1230-31 (9th Cir.
2  2002) ("[T]he procedural default rule barring consideration of a federal claim 'applies only
3  when a state court has been presented with the federal claim,' but declined to reach the issue
4  for procedural reasons, or 'if it is clear that the state court would hold the claim procedurally
5  barred.'") (quoting Harris, 489 U.S. at 263 n.9).

6        In Arizona, claims not previously presented to the state courts via either direct appeal
7  or collateral review are generally barred from federal review because an attempt to return to
8  state court to present them is futile unless the claims fit in a narrow category of claims for
9  which a successive petition is permitted. See Ariz.R.Crim.P. 32.1(d)-(h), 32.2(a) (precluding
10 claims not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar),
11 32.9(c) (petition for review must be filed within thirty days of trial court's decision). Arizona
12 courts have consistently applied Arizona's procedural rules to bar further review of claims
13 that were not raised on direct appeal or in prior Rule 32 post-conviction proceedings. See,
14 e.g., Stewart, 536 U.S. at 860 (determinations made under Arizona's procedural default rule
15 are "independent" of federal law); Smith v. Stewart, 241 F.3d 1191, 1195 n.2 (9th Cir. 2001)
16 ("We have held that Arizona's procedural default rule is regularly followed ["adequate"] in
17 several cases.") (citations omitted), reversed on other grounds, Stewart v. Smith, 536 U.S.
18 856 (2002); see also Ortiz v. Stewart, 149 F.3d 923, 931-32 (rejecting argument that Arizona
19 courts have not "strictly or regularly followed" Rule 32 of the Arizona Rules of Criminal
20 Procedure); State v. Mata, 185 Ariz. 319, 334-36, 916 P.2d 1035, 1050-52 (Ariz. 1996)
21 (waiver and preclusion rules strictly applied in post-conviction proceedings).

22       The federal court will not consider the merits of a procedurally defaulted claim unless
23 a petitioner can demonstrate that a miscarriage of justice would result, or establish cause for
24 his noncompliance and actual prejudice. See Schlup v. Delo, 513 U.S. 298, 321 (1995);
25 Coleman, 501 U.S. at 750-51; Murray, 477 U.S. at 495-96. Pursuant to the "cause and
26 prejudice" test, a petitioner must point to some external cause that prevented him from
27 following the procedural rules of the state court and fairly presenting his claim. "A showing
28

- 11 -

1  of cause must ordinarily turn on whether the prisoner can show that some objective factor
2  external to the defense impeded [the prisoner's] efforts to comply with the State's procedural
3  rule. Thus, cause is an external impediment such as government interference or reasonable
4  unavailability of a claim's factual basis." Robinson v. Ignacio, 360 F.3d 1044, 1052 (9th Cir.
5  2004) (citations and internal quotations omitted). Ignorance of the State's procedural rules
6  or other forms of general inadvertence or lack of legal training and a petitioner's mental
7  condition do not constitute legally cognizable "cause" for a petitioner's failure to fairly
8  present his claim. Regarding the "miscarriage of justice," the Supreme Court has made clear
9  that a fundamental miscarriage of justice exists when a Constitutional violation has resulted
10 in the conviction of one who is actually innocent. See Murray, 477 U.S. at 495-96.

11       Neither Ground One, nor Ground Three, was properly presented to the state court by
12 being timely raised in Petitioner's PCR petition or in his petition for review to the Arizona
13 Court of Appeals. (Exh. N; Doc. 6 at 31-46.) While Petitioner raised differing IAC claims
14 his PCR petition and petition for review, both pleadings failed to mention any failure to
15 investigate or "group plea's" issue, but instead argued IAC generally and relating to the
16 acceptance of his plea and failure to explain the contents of his plea. (Id.) Further, Petitioner
17 made no claim in his PCR petition or petition for review arguing that his sentence was
18 constitutionally excessive or "absurd" as set forth in his habeas petition. (Id.) Thus, Grounds
19 One and Three were not fairly presented to the state courts, and Petitioner would no longer
20 have a remedy if he returned to state court. See Ariz.R.Crim.P. 32.2(a) (precluding claims
21 not raised on appeal or in prior petitions for post-conviction relief), 32.4(a) (time bar). As a
22 result, Grounds One and Three are procedurally defaulted.

23       Petitioner has also not established grounds to excuse the procedural default by a
24 showing of cause and prejudice, and he has not argued a fundamental miscarriage of justice.
25 And, as stated previously, ignorance of the State's procedural rules or other forms of general
26 inadvertence or lack of legal training and a petitioner's mental condition do not constitute
27 legally cognizable "cause" for a petitioner's failure to fairly present his claim.

28

1 Moreover, although "[i]nadequate assistance of counsel at initial-review collateral 2 proceedings may establish cause for a prisoner's procedural default of a claim of ineffective 3 assistance at trial," Martinez v. Ryan, ___ U.S. ___, 132 S.Ct. 1309, 1315 (2012), Petitioner 4 fails to argue "cause" for his default of Ground One pursuant to Martinez. In any event, in 5 his one-sentence argument, Petitioner has not provided citations to the law or the record to 6 support his assertions that counsel was ineffective for failure to "group plea's" and 7 adequately investigate his mental history and alleged prior. His unsupported, conclusory 8 allegations are insufficient to support a claim for ineffective assistance of counsel, see Jones 9 v. Gomez, 66 F.3d 199, 204-05 (9th Cir. 1995) (stating that conclusory allegations with no 10 reference to the record or other evidence do not warrant habeas relief), and, as such, are not 11 "substantial" and fail to establish "cause" under Martinez.[4]

12 Because Petitioner has not established any basis to excuse his procedural default, 13 Petitioner's claims asserted in Grounds One and Three are barred from habeas corpus review. 14 The Court will recommend that Grounds One and Three be denied and dismissed.

**B.   Non-Cognizable Claim**

16 In Ground Two, Petitioner contends that the trial court improperly aggravated his 17 sentence and argues that his aggravated sentence violates his Fifth and Sixth Amendment 18 rights.

19 The Court can grant habeas relief "only on the ground that [a petitioner] is in custody 20 in violation of the Constitution or laws or treatises of the United States." 28 U.S.C. § 21 2254(a). "[I]t is not the province of a federal habeas court to reexamine state-court

---

[4] "Cause" is established under Martinez when: (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral review proceeding." Trevino v. Thaler, ___ U.S. ___, 133 S.Ct. 1911, 1918 (2013) (citing Martinez, 132 S.Ct. at 1318-19, 1320-21).

1  determinations on state-law grounds." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see
2  Gilmore v. Taylor, 508 U.S. 333, 348-49 (1993) ("[M]ere error of state law, one that does
3  not rise to the level of a constitutional violation, may not be corrected on federal habeas.");
4  Lewis v. Jeffers, 497 U.S. 764, 780 (1990) ("[F]ederal habeas corpus relief does not lie for
5  errors of state law."). And, a petitioner may not "transform a state law issue into a federal one
6  merely by asserting a violation of due process." Poland v. Stewart, 169 F.3d 573, 584 (9th Cir.
7  1999) (quoting Langford v. Day, 110 F.3d 1380, 1389 (9th Cir. 1996)); see Engle v. Isaac,
8  456 U.S. 107, 119-21 (1982) ("While they attempt to cast their first claim in constitutional
9  terms, we believe that this claim does no more than suggest that the instructions at
10 respondents' trials may have violated state law.").

11       Petitioner does not present a cognizable federal claim in Ground Two. Sentence
12 calculation and application of state sentencing statutes are matters of state law. See Beaty v.
13 Stewart, 303 F.3d 975, 986 (9th Cir. 2002). Any such state-law error would not constitute a
14 cognizable ground for granting Petitioner federal habeas relief. See Lewis, 497 U.S. at 780
15 (rejecting petitioner's claim that a state court misapplied its own aggravating circumstance
16 because "federal habeas corpus relief does not lie for errors of state law...."); Cacoperdo v.
17 Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994) (concluding, where Nevada prisoner
18 challenged state trial court imposition of consecutive sentences without explanation, "[t]he
19 decision whether to impose sentences concurrently or consecutively is a matter of state
20 criminal procedure and is not within the purview of federal habeas corpus"); see also Isaac,
21 456 U.S. at 119 ("A writ of habeas corpus is available under 28 U.S.C. § 2254(a) only on the
22 basis of some transgression of federal law binding on the state courts."); Poland, 169 F.3d
23 at 584 ("Federal habeas courts lack jurisdiction ... to review state court applications of state
24 procedural rules.").

25       Moreover, the misapplication of state law results in a federal due process violation
26 only if the sentence is arbitrary and capricious, or fundamentally unfair. See Richmond v.
27 Lewis, 506 U.S. 40, 50 (1992); Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994).
28

- 14 -

Petitioner has failed to make a showing of either. See, e.g., Souch v. Schaivo, 289 F.3d 616, 623 (9th Cir. 2002); Christian v. Rhode, 41 F.3d 461, 469 (9th Cir. 1994). Furthermore, the Arizona Court of Appeals articulated how the trial court properly sentenced Petitioner pursuant to applicable Arizona statutes and the plea agreement. (Exh. T at 5-6.)

In sum, Petitioner's sentencing claim is not cognizable and, as such, the Court will recommend that Ground Two be denied and dismissed.

## CONCLUSION

Having determined that Grounds One and Three are procedurally defaulted, and Ground Two fails to state a basis for federal habeas relief, the Court will recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 6) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. See United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any

1  factual determinations of the Magistrate Judge will be considered a waiver of a party's right
2  to appellate review of the findings of fact in an order or judgment entered pursuant to the
3  Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.
4      DATED this 23rd day of April, 2015.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge